UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIM. NO. SA-17-CR-347 DAE |
| Plaintiff, | |
| v. | GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS |
| JEFFREY CLINTON MICHALIK, | EVIDENCE |
| Defendant. | |

COMES Now, the United States of America, by and through its attorneys, and files this opposition to defendant's motion to suppress evidence.

## I.   INTRODUCTION

The Department of Homeland Security, Homeland Security Investigations, (HSI), while working a joint investigation with other federal and international law enforcement agencies, identified an individual using an IP address assigned to the defendant's home in San Antonio, Texas to access a website that contained child pornography.   Specifically, HSI San Antonio, received information that in August of 2014, a unique IP address, specifically assigned to the defendant at his home on Hidden Iron Street in San Antonio, Texas was used to download images depicting children engaged in sexually explicit conduct.

On September 22, 2015, HSI personnel executed a federal search warrant at the residence of the defendant on Hidden Iron Street in San Antonio, Texas.   The defendant was present and agreed voluntarily speak with agents about his involvement in child exploitation activities.   He identified two of the five images of child pornography that were downloaded using the specific IP

address assigned to him at his home.     He also admitted using a laptop computer that was currently at his place of employment, and stated he is not aware of any child pornography on that computer. The defendant provided voluntary verbal and written consent to seize and search the laptop computer that was at his place of employment.    He drove himself as agents followed, to his office, obtained the computer from his desk, and provided it to the agents.

The Defendant stands charged by Indictment with one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(B)(5).   He turned himself in on May 8, 2017 and was released on bond on May 11, 2017.   Current defense counsel filed a notice of appearance on August 22, 2018.

The case is currently set for jury trial on August 19, 2019.   Defendant filed a motion to suppress evidence on August 7, 2019 at 10:37 p.m., arguing the oral and written consent to search the laptop computer was not voluntarily provided and claiming the defendant was in custody at the time he made admissions to federal agents.    As established below, the defendant's claims are supported by neither facts, nor law, and should be rejected by this Court.

## II. FACTS

Operation Amateur Lover (Herein referred to as OPAL) is a joint investigation by Department of Homeland Security (DHS) U.S. Immigration and Customs Enforcement's (ICE) Homeland Security Investigations (HSI) Cyber Crimes Center (C3), HSI Child Exploitation Investigations Unit (CEIU), Federal Department of Justice and Police (FDJP), Federal Office of Police (Fedpol) and Swiss Coordination Unit for Cybercrime Control (CYCO) in Switzerland. The Fedpol investigated a web-board picture gallery site that only partially contained material that depicted the sexual exploitation of minors.   This site contained a member-restricted area and

required members to register on the site to gain access to the restricted areas and to be able to upload content.      On October 9, 2014, the Federal Police in Zurich, Switzerland seized the server, which was being operated out of the residence of a subject in Switzerland.    The operator of the site has been charged with the possession and distribution of child pornography.    The perpetrator was running a website called "amateurlover.no-ip.org", using the free open-source web picture gallery "Coppermine", which was installed and running on his server.    All log-files were exported directly from the media containing the Coppermine application.

Fedpol analyzed the web-board gallery site thoroughly and categorized every site-element into the following three categories: CAM (Child Abuse Material); non-CAM; and non-pertinent.    The site contains material that is approximately 80% over 18 years of age and 20% under 18 years of age.    Fedpol compiled a list of visitor's IP addresses and the exact number of download requests by the visitor's IP addresses in conjunction with the picture categorization. The output of this analysis identified more than 2600 IP addresses that resolved to the USA.    By filtering this output with the criteria of five or more downloads of CAM by the same IP address, Fedpol was able to provide the CEIU with evidence associated with 844 unique IP addresses resolving to the USA.    On January 16, 2015, Fedpol provided the CEIU with access logs and content associated with 844 unique IP addresses resolving to the United States. The data provided by Fedpol included the access logs showing the IP address associated to each download, the date and time, each download and the downloaded images of CAM.

On April 27, 2015, DHS/HSI San Antonio received a lead from DHS/HSI CEIU/C3.    One of the IP addresses identified in the Fedpol data was 75.1.83.139, which geo-located to San

Antonio, Texas.    The log files showed that this IP address was used to access the "amateurlover.no-ip.org" website and download CAM from August 4, 2014 to August 7, 2014.

Data provided by Fedpol showed that an internet connected device using IP address 75.1.83.139 had accessed the "amateurlover.no-ip.org" website and downloaded sixteen (16) images.    Fedpol investigators categorized the downloaded images as six (6) images of CAM, four (4) images of non-CAM and six (6) images of non-pertinent.    Note:    One (1) of the six (6) images of CAM received by you Affiant is a duplicate.

HSI SA Juarez reviewed the downloaded images and based on her training and experience at least five (5) of the downloaded images constitute child pornography as defined in 18 USC § 2256(8).    These five (5) images are described below:

1)    On August 04, 2014, at approximately 04:21:01 (UTC), an internet connected device at IP address 75.1.83.139 connected to the website, "amateurlover.no-ip.org" and downloaded the following image: "57d9e8ea96ea1543e22e3efb4443449f.jpg".    This image shows a naked female, approximately 13-15 years of age, lying on her back on the floor.    The female is holding her legs open with her hands, lasciviously displaying her genitalia.

2)    On August 04, 2014, at approximately 04:23:53 (UTC), an internet connected device at IP address 75.1.83.139 connected to the website, "amateurlover.no-ip.org" and downloaded the following image: "489337931_28129.jpg".    This image shows a naked female, approximately 12-15 years of age, lying on her back, lasciviously displaying her genitalia.

3)  On August 04, 2014, at approximately 04:23:59 (UTC), an internet connected device at IP address 75.1.83.139 connected to the website, "amateurlover.no-ip.org" and downloaded the following image: "17ebb27ae8f37b753cbfc6fdbefb6249.jpg".    This image shows a naked female, approximately 12-15 years of age, who is sitting on a stairway, lasciviously displaying her genitalia.

4)  On August 04, 2014, at approximately 04:27:53 (UTC), an internet connected device at IP address 75.1.83.139 connected to the website, "amateurlover.no-ip.org" and downloaded the following image: "5_.jpg".    This image shows a naked female, approximately 12-15 years of age, lying on a bed; the female is pinching her right nipple with her right hand and lasciviously displaying her genitalia.

5)  On August 04, 2014, at approximately 04:35:36 (UTC), an internet connected device at IP address 75.1.83.139 connected to the website, "amateurlover.no-ip.org" and downloaded the following image: "1166772592.jpg".    This image shows a naked female, approximately 12-15 years old.    The female is on her knees looking towards the camera, her right hand is on her right buttock exposing her anus and lasciviously displaying her genitalia.

IP address 75.1.83.139 was registered to AT&T Internet Services.    HSI received a response to the Summons sent to AT&T Internet Services.    The subscriber for IP 75.1.83.139 was listed as Jeff Michalik registered at 9718 Hidden Iron St., San Antonio, Texas 78250.    Additional subscriber information on Jeff Michalik was listed as:    Primary Phone 210.387.6763; Preferred Email jeffcm2002@yahoo.com.

A federal search warrant was executed at the home of Jeffrey Michalik on September 22, 2015.   The occupants of the residence, three adults and one teenager, were brought to the living room of the home and told that the agents were executing a search warrant for child pornography. Two agents asked the defendant if he would be willing to visit with the agents in the privacy of one of the agents' vehicles and without hesitation, he agreed.   The defendant was told the search warrant would be executed at the house, and that no one was under arrest.   He was told he was under no obligation to speak with the agents and that he was free to leave at any time, including during the interview.   He was advised that he would not be allowed to interfere with the execution of the warrant, but that he was not under arrest and free to leave at any time.   The defendant indicated he understood and proceeded to speak with the agents.

The interview lasted from 6:42 to 7:45 am. No voices were raised.    No threats or promises were made.   The defendant was never handcuffed or physically restrained.    The defendant never asked to stop speaking with the agents.   He never asked for anything during the interview.   He stated early on in the interview that in addition to the electronic devices in his house, he had an iPod in his truck and a Dell laptop at his office. He explained that he occasionally brings the laptop home, but usually keeps it at work.   It was during that part of the interview that the defendant admitted searching pornography sites on his computer at work.   He admitted seeing child pornography on certain websites and stated he is unaware of any pornography on his computer and does not recall downloading any pornography.   After stating that he is the only one that uses his computer, he was asked what search terms he uses when searching for pornography on the internet, to which he responded he uses "puffy pussy", "yoga pants", "sexy teens", "Lolita's", and "young sexy teens".

6

The defendant was shown the five images depicting children engaged in sexually explicit conduct that were downloaded using the IP address assigned to his house.   He stated that he recognized two of the images and initialed them.   He commented that he has seen those images on several websites.   In fact, the defendant told agents he saw the images on a site called "Lil puffy pussies".   The defendant admitted that the last images or videos depicting child pornography that he saw on his computer were titled "really good blow job" and stated the child was probably fourteen (14) years of age.   He further advised that on 10/19/2015, just three days prior to the search warrant, he watched a video either titled "good lay" or "doggie style" which featured an older woman and probably a fourteen (14) year old.   When asked to rate his honesty between 1and 10, he rated himself an 8.

The defendant was then asked if he would be willing to sign a consent to search form for his truck as well as the Dell Laptop at his office.   He voluntarily gave consent for the agents to search the truck, to get the laptop computer from his office, and to search that as well.

The defendant volunteered to take the agents to his place of business to get the Dell laptop computer.   The search of the residence was still ongoing.   Prior to leaving the residence, one of the agents asked if they could make a stop somewhere to use the facilities.   The defendant suggested the stop be made at a nearby McDonald's restaurant.   The defendant drove himself, both to McDonald's and to his place of business.   SA's Juarez and DePaola followed him in one car, and a male agent in yet another car.   While at the McDonald's, SA DePaola again told the defendant he was free to go if he wished and he was under no obligation to help the agents.   She reiterated that he did not have to consent to the search of the laptop.   The defendant indicated he understood.   He then led the agents to his place of business.   Once there, the defendant unlocked

the door and walked in.    Everyone entered the place of business and an agent secured a rifle that was located in the office.    The defendant then retrieved the Dell laptop computer from his desk and provided it to the agents.    It was during this time at the office that SA Juarez provided the defendant with a written consent form.    She filled it in, allowed him to read it, and asked him if he had any questions about it.    The defendant appeared to read the form, indicated he did not have any questions, and voluntarily signed the form.    SA Juarez then signed the form as a witness. The defendant was not handcuffed or arrested.    The parties left the business separately in their own vehicles.

### III. LEGAL ANALYSIS
### A. CONSENT

Government officials may conduct a search without a warrant or probable cause based upon an individual's consent, so long as that consent 1) was voluntary and 2) came from someone authorized to give it.    *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973*); U.S. v. Scroggins,* 599 F.3d 433, 441-42 (5th Cir, 2010); *See also, US. V. Matlock,* 415 U.S. 164, 172 n.7 (1974).    Any evidence discovered during a consent search may be seized and admitted at trial. Consent may be express or implied, and need not be knowing and intelligent even though it constitutes a waiver of Fourth Amendment rights. *Id.*

To determine whether consent was voluntarily given, courts examine the totality of the circumstances.    Factors that weigh on the court's determination of voluntariness include: 1) the consenting individual's knowledge of the constitutional right to refuse consent; 2) the consenting individual's age, intelligence, education, and language ability; 3) the degree to which the consenting individual cooperates with law enforcement; 4) the consenting individual's attitude about the likelihood of the discovery of contraband; and 5) the length of detention and the nature

of questioning.   *Id.* at 226-27.   No single factor is dispositive.   The prosecution bears the

burden of proving voluntary consent.   *Id.*, at 222.

      In the instant case, the defendant was forty (40) years old at the time of the interview.   He

is a high school graduate and owns a cabinet business with his brother.   There was no language

barrier between him and the agents.   He was cooperative and the entire interview was cordial and

only lasted one hour.   The agents did not raise their voices and did not physically assault or

restrain the defendant at any time.   The atmosphere was calm.   The defendant volunteered to

take the agents to his place of business to obtain the computer.   He stated during the interview

that although he searches pornography websites using that computer at work, he did not believe

there was any pornography on his computer.   He drove himself and had many opportunities to

refuse consent or to stop cooperating with the agents.   He did not do that.   He provided both oral

and then written consent to search the Dell laptop computer, that he uses at home, but keeps at

work.

      The had already been advised by agents that he was under no obligation to talk to them and

was completely free to leave.   He provided voluntary consent to search the laptop computer after

he had been advised he was free to leave and did not have to speak with the agents.   *See U.S. v.

Arias-Robles*, 477 F.3d 245-49 (5th Cir. 2007)(consent to search voluntary even though defendant

was not made aware of his right to refuse consent because trooper told defendant he was free to go

and returned his belongings before asking to search).   Moreover, the defendant not only provided

voluntary consent to search the laptop, but also led law enforcement agents to his place of

employment and retrieved the laptop for them.   During the stop at McDonald's, he was again told

by SA DePaola that he was under no obligation to grant consent and that he was free to go at any

time.   The defendant fully understood and continued to cooperate. *See Scroggins*, 599 F.3d 433, 441-42 (5th Cir. 2010) (consent voluntary because suspect allowed officer to follow her into her house).

The defendant in this case, in addition to providing oral consent to search his computer during the interview, also executed a written consent form.   The form reads:

I, Jeffrey Michalik, have been informed by Immigration and Customs Enforcement (ICE) Agent Juarez, of my right to refuse consent to a search of my property.   I have also been warned by ICE agent Juarez that if I voluntarily consent to a search of this property, anything discovered during this search may be used against me in a court or in any ICE or administrative proceedings.

I have decided, however, to allow ICE Agents Juarez, Linares, and DePaola to conduct a complete search of my Dell Laptop located at 5723 Mobud, SA TX.   These Agents are authorized by me to take any letters, papers, materials or other property that they may desire to examine.   I hereby voluntarily and intentionally consent to allow ICE Agents to search my property.   My consent is freely given and is not the result of any promises, threats, coercion, or other intimidation. I have read the above statement and understand my rights.

The form then lists the printed name of Jeff Michalik, his signature, and the date and time of 10-22-15 at 8:45 a.m.   The form was witnessed by SA Argie Juarez, whose signature is also on the form.   The execution of this form shows the defendant was advised of his right to refuse consent; that his consent was voluntarily and intelligently made; and that he was aware of the nature of the consent.   The facts in this case show both the oral consent, provided during the interview, as well as the written consent, and were made knowingly and voluntarily.

## B.  PROBABLE CAUSE

The agents had probable cause to obtain a separate search warrant for the Dell laptop computer.

Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (*citing Illinois v. Gates*, 462 U.S. 213, 238(1983); *Brinegar v. United States*, 338 U.S. 160, 175-76(1949)).   Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity.   *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004)(quoting United States v. Daniel, 982 F. 2d 1146, 151 (5th Cir. 1993)).

The reasonable inference that there may be evidence of child pornography on the Dell laptop computer that was located at the defendant's place of business meets the *Gates* "fair probability" test.   It neither strains logic, nor defies common sense to conclude, based upon the totality of the circumstances, that probable cause existed to search the Dell laptop computer given the following factors, that were made known to investigators during the interview with the defendant:

1) the laptop is occasionally brought to the house;

2) the same house is assigned an IP address that was used to download images of child pornography;

3) the defendant recognizes two of the images depicting child pornography that were downloaded using the IP address assigned to his house;

4) the defendant has seen those images of several websites;

11

5) the computer is only used by the defendant;

6) the defendant searches for pornography websites on the computer at work;

7) the defendant uses the search terms "lolitas", "sexy teens", and "young sexy teens";

8) the last child pornography video or images the defendant saw on his computer involved a fourteen (14) year old child and were titled "really good blow job"; and

9) three days before the execution of the search warrant, defendant watched a video either titled "good lay" or "doggie style" that featured an older woman and a fourteen (14) year old.

The Fifth Circuit has ruled that probable cause "does not require proof beyond a reasonable doubt; rather, a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) *citing United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991).

Applying all of these legal principles, there was probable cause to authorize the seizure and search of the Dell laptop computer. The agents could have obtained a search warrant for the Dell laptop computer.   However, given the knowing and voluntary consent by the sole user of the computer, obtained during a noncustodial interview, they did not obtain a warrant, but acted appropriately given the voluntary consent they were provided.

### IV. THE STATEMENT

The government bears the burden of establishing the admissibility of a statement by a preponderance of the evidence.   *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986). However, before the burden of persuasion shifts to the government, the defendant must first make a specific factual allegation that sets forth a prima facie showing of illegality.   *See United States v. De La Fuente*, 548 F.2d 528, 533-34 (5th Cir. 1977) ("even in those situations in which

12

the government may bear the ultimate burden of persuasion, the defendant must first discharge his initial burden of producing some evidence on specific factual allegations sufficient to make a prima facie showing of illegality").    If a defendant meets his burden of production, the government must prove by a preponderance of the evidence that the evidence was obtained legally. *Id.*

The defendant argues he was in custody during the execution of the search warrant at the defendant's home and during the interview that took place in a vehicle located outside the home. Statements made during a custodial interrogation cannot be used unless the accused has been advised of his right to remain silent and right to counsel.   *Miranda v. Arizona*, 384 U.S. 436, 473 (1966).   However, in this case, the defendant was not in custody and a defendant who voluntarily gives a statement to law enforcement in a non-custodial situation need not be advised of *Miranda* rights.   *United States v. Courtney*, 463 F.3d 333, 336 (5th Cir. 2006) (*citing Oregon v. Mathiason*, 429 U.S. 492, 495 (1966).

A suspect is "in custody" for purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."   *United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006) (*quoting United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988).    The reasonable person through whom the court views the situation "must be neutral to the environment and to the purposes of the investigation – that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances."   *Id.*   (*quoting Bengivenga*, 845 F.2d at 596.   That is, whether an individual is in custody depends on the objective circumstances of the interrogation,

13

not on the subjective views harbored by either the interrogating officers or the person being questioned.

A determination of whether a defendant is "in custody" for purposes of *Miranda* depends on the "totality of circumstances." *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (*citing California v. Beheler*, 463 U.S. 1121, 1125 (1983). In making this determination, the Court must examine all the circumstances surrounding the interrogation and make two inquiries: (1) what were the circumstances surrounding the interrogation and (2) given those circumstances, would a reasonable person think he was not at liberty to terminate the interrogation and leave. *Thomas v. Keohane*, 516 U.S. 99, 116 S.Ct. 457 (1995). *United States v. Hurtado*, 899 F.2d 371, 374 (5th Cir. 1990); *United States v. Crawford*, 52 F.3d 1303, 1307 (5th Cir. 1995).

Based upon the evidence in this case, the defendant's interrogation was non-custodial. The defendant was advised agents were executing a search warrant and was told he was not under arrest. He was told he did not have to speak with investigators. He was advised that any interview was completely voluntary. The defendant in the instant case agreed to speak with agents. It was completely his decision as to whether or not to speak with federal agents, and he advised the agents he would voluntarily speak with them and he understood he was not under arrest and was free to leave.

The defendant was never arrested, handcuffed or physically restrained. There was nothing that occurred during the encounter with law enforcement that would have made a reasonable person feel as if there was such a significant restraint on his or her freedom of movement to the degree associated with a formal arrest.

14

The defendant's reliance on *United States v. Summers* is misplaced.   Defendant claims the initial detention of the occupants in the home was used as an opportunity to interrogate the defendant.    That is not accurate.    After the initial protective sweep of the home for officer safety, all occupants were free to leave the premises.    They could stay, as long as they did not interfere with the execution of the search warrant, or they could leave.    The defendant was advised multiple times that he was not under arrest and was free to leave.   He chose to stay and speak with the agents.   He chose to provide consent to search his Dell laptop computer.   He chose to drive to his place of business in order to provide laptop computer to the agents.

A Fourth Amendment seizure does not render a person in custody for *Miranda* purposes. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).   While "seizure" and "custody" both deal with the restraint of a person's freedom to walk away from the police, custody arises only if the restraint on freedom is a certain degree – the degree associated with formal arrest. *Bengivenga,* at 598.    There was no restraint on the defendant's freedom of movement in any way associated with formal arrest.    The defendant made a conscious, voluntary and intentional choice to speak with investigators.    He was never restrained; handcuffed, or physically touched.    He was specifically told he was not under arrest.   He was not in custody

The Fifth Circuit has declined to find a custodial interrogation even in circumstances where the defendant was not advised of his right to leave the premises.   In *United States v. Crawford*, the court held that the defendants were not in custody. 52 F.3d 1303, 1307 (5th Cir. 1995).    In that case, the FBI agents testified they did not ever advise the defendants that they were free to leave and the defendants did not ask to leave the premises. *Id*. Additionally, the defendant in *Crawford* was prohibited from answering a phone call during questioning and was prevented from helping

15

customers.  *Id* at 1308.   Nonetheless, the court held that the questioning did not give rise to a custodial interrogation.  *Id* at 1308-09.

This case is similar to *U.S. v. McNair*, 2010 WL 2038297 (W.D. Tex. 2010). In *McNair*, the suspect was told that the interview was voluntary, that he was not under arrest, that the agents were investigating trafficking of child pornography, that he was free to leave at any time, and that it "was up to him to answer any questions."   As in this case, in *McNair*, the interview took place in a bedroom on the second floor of the house.   However, in *McNair*, the interview lasted one hour and forty minutes. During the interview, McNair admitted to having an interest in child pornography, and acknowledged that he had downloaded images and videos.   After examining all of the circumstances surrounding the interrogation, the Court concluded that there was no restraint on McNair's freedom of movement of the degree associated with a formal arrest. McNair was told he was free to leave at any time, was informed that his interview was voluntary, and he was not handcuffed at any point. The Court concluded that a reasonable person would have felt he was at liberty to terminate the interrogation and leave at any time. The Court of Appeals affirmed stating "McNair was in his home when the detention occurred, and an agent testified that McNair was told he was free to leave. We have held that under such circumstances, a reasonable person does not suffer the restraints associated with an arrest. *United States v. Harrell*, 894 F.2d 120, 124–25 (5th Cir. 1990)." *McNair,* 444 F. App'x 7690 (5th Cir. 2011)

In *United States v. Hurtado*, 899 F.2d 371, 375 (5th Cir. 1990), the defendant was interrogated by six agents in a small room in the home. *Id.*   The defendant was not told she was under arrest or that she could not leave. *Id.*   Despite her claims that she was nervous and surprised at the time of the search, the court held the psychological pressure due to fear of agents discovering

illegal activities is irrelevant. *Id*.    The Fifth Circuit found that those circumstances did NOT give rise to a custodial interrogation. *Id*.

In the instant case, defendant was in his own home when he was encountered by law enforcement.    It was explained to him that a search warrant was being executed.    When asked if he would be willing to speak with agents, he agreed.    The defendant was told he was free to leave. The defendant never asked to leave. The defendant was never handcuffed.    A reasonable person, after being told by the agents that he was free to leave, was not under arrest, and could leave anytime, would have known he could terminate the interview at any time.

The interview lasted only 63 minutes. During the interview, the defendant identified some of the images downloaded from a website using the IP address assigned to his home.    He admitted using search terms that would yield images and videos of children engaged in sexually explicit conduct.    He admitted using a Dell laptop computer, that he keeps at work but brings home occasionally, to view and search for pornography.    This was not a situation where the extended length of the interview can be argued to have resulted in incriminating statements being made. The defendant was not handcuffed or physically restrained at any time before or during the interview.

There is nothing in this case that would lead a reasonable person in the suspect's position to understand the situation to constitute a restraint on freedom of movement of the degree which the law associated with formal arrest.    The evidence in this case supports the conclusion that the defendant was not in custody at any time and all of his statements should be admissible at trial.

## V.CONCLUSION

The Court should deny the defendant's motion to suppress evidence seized as a result of

the noncustodial statements made by the defendant, and the voluntary oral and written consent provided by the defendant to search his computer.

Respectfully submitted,

JOHN F. BASH
UNITED STATES ATTORNEY

DATE: *August 9, 2019*

BY: _Tracy Thompson_
TRACY THOMPSON
Assistant U.S. Attorney

18

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

JEFFREY CLINTON MICHALIK,

          Defendant.

CRIM. NO. SA-17-CR-347 DAE

## **O R D E R**

On this day came on to be considered the Defendant's Motion to Suppress.   The Court is of the opinion that said Motion and Request should be Denied.

It is therefore ORDERED that the Motion to Suppress is hereby DENIED.

SIGNED and ENTERED this _____ day of _____, 2019.

_____
THE HONORABLE DAVID A. EZRA
SENIOR UNITED STATES DISTRICT JUDGE

19

CERTIFICATE OF SERVICE

I hereby certify that on the 9th of August, 2019, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participants on file.

TRACY THOMPSON
Assistant United States Attorney